**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
UNITED STATES OF AMERICA,

     Plaintiff,

              **MEMORANDUM OF**
  -against-        **DECISION AND ORDER**
              12-CV-2577 (ADS)(ARL)
NANCY BLAKE, as personal representative for
the Estate of Ada Talbot, deceased,

     Defendant.
--------------------------------------------------------X

<u>**APPEARANCES:**</u>

**U.S. Department of Justice, Tax Division**
*Attorneys for the Plaintiff*
P.O. Box 55, Ben Franklin Station
Washington, DC 20044-0055
 By: Bartholomew Cirenza, Trial Attorney

**Gleich Siegel & Farkas**
*Attorneys for the Defendant*
36 South Station Plaza
Great Neck, NY 11021
 By: Lara Pouratian Emouna, Esq., of Counsel

**SPATT, District Judge.**

  On May 22, 2012, the Plaintiff United States of America ("the Plaintiff") commenced

this action seeking to collect an assessed federal estate tax from the Estate of Ada Talbot, now

deceased. In this regard, the United States of America seeks judgment against the defendant

Nancy Blake ("the Defendant"), as personal representative for the Estate of Ada Talbot,

deceased, in the amount of $456,775.68, plus accrued statutory additions computed from the date

of assessment until fully satisfied.

  Presently pending before the Court is the Defendant's motion to dismiss the Amended

Complaint pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and/or

12(b)(6). In the alternative, the Defendant requests that this Court abstain from hearing this action or stay this action pending final judgment in a related action pending in New York State Supreme Court, Nassau County, entitled <u>Nancy Blake v. United States of America</u>, Index No.: 2010/003268 ("the Quiet Title Action").  For the reasons that follow, the Court abstains from exercising jurisdiction and dismisses the Plaintiff's action.

## I.    BACKGROUND

### A.  The Tax Assessments

On July 3, 1989, Ada Talbot ("Talbot") died testate.  (Cirenza Decl., Exh. A.)  In her last will and testament, in relevant part, Talbot appointed her daughter, Betty Blake ("Blake") as executrix of the last will and testament.  (Cirenza Decl., Exh. B.)  However, in the event Blake died, failed to qualify, resigned or became incapable of acting, Talbot appointed her granddaughter, the Defendant, as successor executrix.  (Cirenza Decl., Exh. B.)

On June 4, 1991, a "United States Estate (and Generation Skipping Transfer) Tax Return" form ("Form 706") was filed with the United States Internal Revenue Service ("IRS") on behalf of Talbot's Estate ("the Estate").  (Cirenza Decl., Exh. C.)  Line 21 of Form 706 indicated a net estate tax liability of $253,590.  (Cirenza Decl., Exh. C.)  Line 28 of Form 706 indicated that this same amount, $253,590, was the balance due with the return.  (Cirenza Decl., Exh. C.)

On July 29, 1991, the IRS made a tax assessment against the Estate for an estate tax in the amount of $253,590.40.  (Cirenza Decl., Exh. E.)   On March 11, 1992, a "Revenue Officer Report for the Special Procedures function of Proof of Claim Proceeding" form ("Form 4488) was executed by IRS Revenue Officer Patricia Amari.  (Cirenza Decl., Exh. E.)  Form 4488 listed Blake as the executor and Stephen Gleich, whose firm now represents the Defendant, as

her attorney.  (Cirenza Decl., Exh. E.)  Form 4488 indicated that the unpaid balance on the July 29, 1991 tax assessment, including penalties and interest, was $374,123.79.  (Cirenza Decl., Exh. E.)  According to Form 4488, the Estate had no liquid assets to provide for immediate payment of the liability, and although the Estate was seeking a mortgage on property to provide partial payment of the tax, full payment was not anticipated for a year.  (Cirenza Decl., Exh. E.)

Starting on June 18, 1992 and continuing to March 10, 1993, the Estate through its attorneys corresponded with the IRS concerning the outstanding estate tax liability of the Estate.  (Cirenza Decl., Exh. F.)  In order to satisfy this outstanding estate tax liability, the Estate represented that it was trying to obtain a mortgage loan for property owned by the Estate and located in Kings County at the address 2235 Emmons Avenue, Brooklyn ("Premise One").  *Cirenza Decl., Exh. F.)  However, the Estate was encountering difficulties in securing the financing.  (Cirenza Decl., Exh. F.)  The Estate also requested abatement of certain penalties and transmitted minor payments to the IRS.  (Cirenza Decl., Exh. F.)

On April 27, 1993, the IRS served Blake, in her capacity as executrix of the Estate, with a "Proof of Claim for Internal Revenue Taxes" form ("Form 4490").  (Cirenza Decl., Exh. G.)  Form 4490 stated that the Estate was "justly and truly indebted to the United States in the amount of $456,775.68 with interest."  (Cirenza Decl., Exh. G.)  In this regard, Form 4490 provided that the amount of the estate tax was $231,481.46, the amount of the statutory penalties, calculated to May 15, 1993, was $118,961.39 and the amount of the interest, also calculated to May 15, 1993, was $106,332.83.  (Cirenza Decl., Exh. G.)  Form 4490 further provided that the tax lien arose on July 29, 1991.

Form 4490 was accompanied by a letter, also dated April 27, 1993.  (Cirenza Decl., Exh. G.)  The letter instructed Blake to acknowledge receipt by stamping or endorsing a duplicate

copy of Form 4490, which the IRS provided her, and returning the copy to the IRS in the enclosed addressed and postpaid envelope. (Cirenza Decl., Exh. G.)

According to the Plaintiff's opposition papers, the April 27, 1993 Form 4490 did not result in immediate payment and on November 30, 1994, the IRS mailed Notices of Intent to Levy to (1) Blake; (2) the Estate and Blake's attorneys; and (3) the Estate and Blake's CPA. (Pl. Opp., pg. 4.) However, the Plaintiff provides no evidence to support these statements, nor makes these factual allegations in its Amended Complaint.

On June 21, 1994, the IRS made another tax assessment against the Estate. (Cirenza Decl., Exh. D.) In its opposition papers, the Plaintiff suggests that the June 21, 1994 tax assessment against the Estate was for unpaid estate tax amounting to $54,838.00. (Pl. Opp., pg. 3.) Nevertheless, the Amended Complaint fails to even mention the estate tax liability that was assessed by the IRS in connection with the June 21, 1994 tax assessment. In addition, the Plaintiff and the Defendant have not offered any evidence regarding the amount of estate tax liability assessed by the IRS on June 21, 1994.

On August 11, 1995, an "Installment Agreement" form ("Form 433-D") was executed by Wayne Foreman, CPA, on behalf of the Estate. (Cirenza Decl., Exh. H.) Under the Installment Agreement, the Estate agreed to pay the estate tax liability—by then $560,214.98 plus accruals—by making monthly payments in the amount of $2,500 by the 11th of every month. (Cirenza Decl., Exh. H.) However, for the November 11, 1995 payment, the Estate agreed to pay $12,500 instead of $2,500. (Cirenza Decl., Exh. H.)

**B. The Estate's Default on the Installment Agreement and the Notices of Federal Tax Liens**

On June 19, 2005, Blake died. (Cirenza Decl., Exh. I.) According to the Plaintiff, the IRS was never informed of Blake's death and, thereafter, the Estate defaulted on the Installment

Agreement and its estate tax liability remained unsatisfied. (Pl. Opp., pg. 4.) Prior to her death, on June 17, 2005, IRS Technical Service Advisor Michael J. Seidita ("Seidita") had sent a letter to Blake advising her that the outstanding balance due to the IRS was $1,110,586.40 and demanding full payment within 30 days of the date of the letter. (Cirenza Decl., Exh. J.) Seidita also informed Blake that he had filed appropriate Notices of Federal Tax Liens to protect the Plaintiff's interest. (Cirenza Decl., Exh. J.) A copy of the June 17, 2005 letter was sent to the Defendant. (Cirenza Decl., Exh. J.) The letter did not clarify whether it was being sent to the Defendant in her individual capacity or in her capacity as a personal representative of the Estate. (Cirenza Decl., Exh. J.)

The two properties that were subject to the abovementioned Notices of Federal Tax Liens are presently owned by the Defendant in fee simple. (Emouna Aff., Exh. A.) The first of these premises is Premise One. (Cirenza Decl., Exh. J.; Emouna Aff. Exh. A.) The Defendant acquired her fee interest in Premise One by virtue of three deeds. (Emouna Aff., Exh. A.) The first deed was made and delivered on or about November 17, 2004 and was recorded in the Office of the Kings County City Register on January 28, 2005. (Emouna Aff., Exh. A.) The second deed was made and delivered on or about January 6, 2010 and was recorded in the Office of the Kings County City Register on January 12, 2010. (Emouna Aff., Exh. A.) Finally, the third deed was made and delivered on or about January 6, 2010 and was recorded in the Office of the Kings County Register on January 19, 2010. (Emouna Aff., Exh. A.)

The second premise is located in Nassau County at the address 74 Laurel Avenue, Sea Cliff ("Premise Two"). (Cirenza Decl., Exh. J.; Emouna Aff., Exh. A.) The Defendant acquired her fee interest in Premise Two by virtue of three deeds. (Emouna Aff., Exh. A.) The first deed was made and delivered on or about November 17, 2004 and was recorded in the Office of the

Nassau County Clerk on January 5, 2005. (Emouna Aff., Exh. A.) The second and third deeds were made and delivered on or about January 6, 2010 and were recorded in the Office of the Nassau County Clerk on January 13, 2010. (Emouna Aff., Exh. A.)

By virtue of the Notices of Federal Tax Lien, which were filed in the Office of the Nassau County Clerk and the Office of the Kings County City Register, the Plaintiff claimed an interest in Premise One and Premise Two adverse to that of the Defendant. (Emouna Aff., Exh. A.) These Notices were filed against the Estate, as well as Blake and the Defendant, each in their capacity as executrix of the Estate. (Emouna Aff., Exh. A.) With respect to Premise One, a Notice of Federal Tax Lien was filed on or about April 6, 2004. (Emouna Aff., Exh. A.) As for Premise Two, a Notice of Federal Tax Lien was filed on or about April 22, 2004. (Emouna Aff., Exh. A.) Both these Notices included the unpaid balance from the July 29, 1991 and June 2, 1994 assessments. (Emouna Aff., Exh. A.)

However, on June 1, 2009, it appears that the IRS partially revoked the Federal Tax Liens placed on Premises One and Two through the execution of two "Revocation of Certificate of Release of Federal Tax Lien" forms ("Form 12474-A") . (Emouna Aff., Exh. A.) The "reason for revoking the certificate of release and reinstating the notice of federal tax lien" was that the "Notice of Federal Tax Lien was not timely filed." (Emouna Aff., Exh. A.) Thereafter, on June 25, 2009 and June 29, 2009, the IRS filed Notices of Federal Tax Lien with the Office of the Nassau County Clerk and the Office of the Kings County Register with respect to Premise One. (Emouna Aff., Exh. A.) These 2009 Notices only listed the unpaid balance from the June 2, 1994 estate tax assessment, and not the July 29, 1991 estate tax assessment. (Emouna Aff., Exh. A.)

## C.  The Quiet Title Action

On February 18, 2010, the Defendant, in her individual capacity, commenced an action against the Plaintiff by filing a verified complaint in the Supreme Court of the State of New York, County of Nassau ("the Quiet Title Action").  (Emouna Aff., Exh. A.)   In the verified complaint, the Defendant alleged "that any claims to, or lien against, [Premise One and Premise Two] that [the Plaintiff] may make are invalid and of no force and effect to the extent that, <u>inter alia</u>, [the Plaintiff] and/or the [IRS] are time-barred from asserting said claims or liens." (Emouna Aff., Exh. A.)  Thus, the Defendant sought to quite title to Premise One and Premise Two.  (Emouna Aff., Exh. A.)  In this regard, the Defendant sought to forever bar the Plaintiff from all claims to an estate or interest in Premise One or Premise Two.  (Emouna Aff., Exh. A.) She also requested a judicial determination that (1) she was the lawful owner of Premises One and Two; (2) she was vested with an absolute and unencumbered title and fee to Premises One and Two; and (3) Premise One and Premise Two were not subject to any liens of the Plaintiff or the IRS.  (Emouna Aff., Exh. A.)  Lastly, the Defendant sought to be awarded sole and complete possession of Premise One and Premise Two and to remain in possession of both premises. (Emouna Aff., Exh. A.)

According to the parties, the Defendant moved for a default judgment against the Plaintiff in the Quiet Title Action.  (Emouna Aff., ¶ 6; Pl. Opp., pg. 4.)  Thereafter, the Plaintiff opposed to the Defendant's motion for a default judgment and filed an answer to the verified complaint. (Emouna Aff., ¶ 7; Pl. Opp., pg. 4.)  By short order dated March 29, 2011, the Supreme Court of Nassau County (Iannacci, J.) denied the Defendant's motion for a default judgment.  (Emouna Aff., ¶ 7; Pl. Opp., pg. 4.)  The March 29, 2011 Order was appealed to the New York State Appellate Division, Second Judicial Department ("Second Department").  (Emouna Aff., ¶ 7; Pl.

Opp., pgs. 4–5.)  At the time of the parties' filings in this case on the present motion to dismiss, the Second Department had yet to issue a decision with respect to the March 29, 2011 Order. (Emouna Aff., ¶ 7; Pl. Opp., pgs. 4–5.)

As of December 4, 2012, the Quiet Title Action was still being actively litigated before the Supreme Court of Nassau County.  (Emouna Aff., Exh. B; Emouna Rep. Aff., Exhs. A and B.)  The Plaintiff never removed the Quiet Title Action to federal court pursuant to 28 U.S.C. §§ 1441 and 1446.

**D.  Procedural History in the Present Action**

On May 22, 2012, while the Quiet Title Action was being litigated, the Plaintiff commenced this action.  In its Original Complaint, the Plaintiff did not name the Defendant, but instead named "Jane Doe, as personal representative for the Estate of Ada Talbot, deceased," as the Defendant had not yet been appointed by the New York State Surrogate's Court for Kings County, New York.  (Orig. Compl., ¶ 9.)   The Original Complaint alleged that "Blake, in her capacity as executrix for the Estate . . . failed, refused, or neglected to pay the amount of the [tax] assessment" from July 29, 1991 (Orig. Compl., ¶¶5–6.)  It also alleged that no action had been taken by the New York State Surrogate's Court with respect to the IRS's April 27, 1993 Form 4490, discussed above.  (Orig. Compl., ¶¶ 7–8.)  The Original Complaint did not mention the June 2, 1994 tax assessment.

On September 17, 2012, the Plaintiff requested that this Court issue an order extending, by 61 days, the time within which the Plaintiff could serve the Defendant.  On September 24, 2012, the Court granted the Plaintiff's request, thereby extending the Plaintiff's time to serve the defendant from September 19, 2012 to November 19, 2012.  Thereafter, on October 4, 2012, the Plaintiff filed the Amended Complaint, naming the Defendant, in her capacity as the successor

representative for the Estate, as a party in this action.  By that time, the Defendant had been

appointed as administrator by the New York State Surrogate's Court.  (Amen. Compl., ¶ 10.)

## II.  DISCUSSION

### A.  Legal Standard on a Fed. R. Civ. P. 12(b)(1) Motion to Dismiss

"A case is properly dismissed for lack of subject matter jurisdiction under [Fed. R. Civ.

P.] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."

Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In addition, "[a] motion to dismiss

based on the abstention doctrine is also considered as a motion made pursuant to Rule 12(b)(1)."

City of New York v. Milhelm Attea & Bros., Inc., 550 F. Supp. 2d 332, 341–42 (E.D.N.Y.

2008).

The standard for reviewing a Fed. R. Civ. P. 12(b)(1) motion to dismiss is essentially

identical to the Fed. R. Civ. P. 12(b)(6) standard, discussed below, except that "[a] plaintiff

asserting subject matter jurisdiction has the burden of proving by a preponderance of the

evidence that it exists."  Id. at 113.  In adjudicating a motion to dismiss for lack of subject matter

jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings.

Makarova, 201 F.3d at 113.

With respect to the abstention doctrine, "[a]bstention from the exercise of federal

jurisdiction is the exception, not the rule."  Colorado River Water Conservation District v.

United States, 424 U.S. 800, 813, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976).  Indeed, "[t]he

abstention doctrine comprises a few 'extraordinary and narrow exception[s]' to a federal court's

duty to exercise its jurisdiction."  Woodford v. Cmty. Action Agency of Greene County, Inc.,

239 F.3d 517, 522 (2d Cir. 2001) (quoting Colorado River, 424 U.S. at 813).  Abstention is

appropriate (1) "in cases presenting a federal constitutional issue which might be mooted or

presented in a different posture by a state court determination of pertinent state law"; (2) "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; and (3) "where, absent bad faith, harassment, or a patently invalid state statue, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings." Colorado River, 424 U.S. at 814–17.

In addition, relevant to the instant case, in Colorado River Water Conservation District v. United States, 424 U.S. at 817, the Supreme Court carved out a fourth category in which abstention is appropriate. In this regard, while "[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," id. at 817, "[u]nder the Colorado River exception the court may abstain in order to conserve federal judicial resources," Woodford, 239 F.3d at 522. However, the Colorado River exception only permits abstention "in 'exceptional circumstances,' where the resolution of existing concurrent state-court litigation could result in 'comprehensive disposition of litigation.'" Id. (quoting Colorado River, 424 U.S. at 813, 817). As such, unlike other doctrines of abstention which are premised on the careful balance between federal and state power, Colorado River mainly concerns the conservation of judicial resources.

Before engaging in the analysis of whether to abstain under Colorado River, a court must determine if the concurrent state and federal proceedings are parallel. Dittmer v. Cnty. of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998). Cases are considered "parallel" when "the main issue in the case is the subject of already pending litigation." GBA Contr. Corp. v. Fidelity & Deposit Co., 00 Civ. 1333 (SHS), 2001 U.S. Dist. LEXIS 32, at *3 (S.D.N.Y. Apr. 23, 2001).

Only if the federal and state cases are parallel, do courts consider a six-factor test to determine if abstention is appropriate under <u>Colorado River</u>, namely: (1) whether the controversy involves a *res* over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights. <u>Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 22–27, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); <u>Colorado River</u>, 424 U.S. at 818.

None of the abovementioned factors "is necessarily determinative," and "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." <u>Moses H. Cone</u>, 460 U.S. at 15–16 (quoting <u>Colorado River</u>, 424 U.S. at 818–19, 96 S. Ct. 1236). However, the Supreme Court has cautioned that "[o]nly the clearest of justifications will warrant dismissal." <u>Id.</u> at 16 (quoting <u>Colorado River</u>, 424 U.S. at 818–19). Thus, "[a]lthough the decision whether to abstain on <u>Colorado River</u> grounds is committed to the district court's discretion," <u>Woodford</u>, 239 F.3d at 523, the Court's analysis is "heavily weighted in favor of the exercise of jurisdiction," <u>Moses Cone</u>, 460 U.S. at 16.

## B.  Legal Standard on a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

Under the now well-established <u>Twombly</u> standard, a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 570 (2007). Indeed, the issue on a motion to dismiss is "not

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles. Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. at 72 (quoting Iqbal, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief will it grant dismissal pursuant to Rule 12(b)(6)." Hertz Corp. v. City of N.Y., 1 F.3d 121, 125 (2d Cir. 1993).

**C.  As to Whether Dismissal of this Action is Warranted pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and the New York Surrogate's Court Procedure Act**

The Defendant in this action first argues that the Plaintiff's action must be dismissed because this Court does not have subject matter jurisdiction under the "probate exception."  (Def. Mem., pg. 3–5.)  This exception "has been described as 'one of the most mysterious and esoteric branches of the law of federal jurisdiction.'"  Ashton v. Paul, 918 F.2d 1065, 1071 (2d Cir. 1990) (citing Dragan v. Miller, 679 F.2d 712, 713 (7th Cir. 1982)); see also Cadle Co. v. D'Addario, Civil NO. 3:01CV1103(AHN), 2005 U.S. Dist. LEXIS 38394, at *10 (D. Conn. Dec. 20, 2005). Under this exception, "probate matters are excepted from the scope of federal diversity jurisdiction."  Kennedy v. Trs. of the Testementary Trust, 406 F. App'x 507, 509 (2d Cir. 2010) (quoting Lefkowitz v. Bank of New York, 528 F.3d 102, 105 (2d Cir. 2007)) (internal quotation marks omitted); see also Dulce v. Dulce, 233 F.3d 143, 145 (2d Cir. 2000) (quoting Markham v. Allen, 326 U.S. 490, 494, 90 L. Ed. 256, 66 S. Ct. 296 (1946)) ("[A] federal court has no jurisdiction to probate a will or administer an estate.").

Of importance, "the probate exception is narrow, and should not be used as an excuse to decline to exercise jurisdiction over actions merely because they involve a 'probate related matter.'"  Marcus v. Quattrocchi, 715 F. Supp. 2d 524, 531 (S.D.N.Y. 2010) (citing Marshall v. Marshall, 547 U.S. 293, 126 S. Ct. 1735; 164 L. Ed. 2d 480 (2006)).  In this regard, the Supreme Court has recognized that under the probate exception, "federal courts have jurisdiction to entertain suits to determine the rights of creditors, legatees, heirs, and other claimants against a decedent's estate, 'so long as the federal court does not interfere with the probate proceedings.'"  Marshall, 547 U.S. at 311 (quoting Markham, 326 U.S. at 494).  However, the Supreme Court explained that "the 'interference' language" found in the phrase "interfere with the probate proceedings" should be understood to simply be "a reiteration of the general principle that, when

13

one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*. . . [and] not [as a] bar [on] federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." <u>Marshall</u>, 547 U.S. at 311–12.

"[D]etermining whether a case falls within the probate exception involves a two-part inquiry[.]" <u>Marcus</u>, 715 F. Supp. 2d at 532 (citations and internal quotation marks and alterations omitted). First, a court must determine "whether the action requires the probate or annulment of a will or the administration of a decedent's estate." <u>Id.</u> Then, a court must inquire "whether the action requires the court to dispose of property that is in the custody of a state probate court." <u>Id.</u>

As an initial matter, as suggested above, <u>see</u> <u>Kennedy</u>, 406 F. App'x at 509, the probate exception typically applies to diversity cases. However, the Plaintiff in this case does not assert federal diversity jurisdiction. Rather, the Plaintiff asserts that "[j]urisdiction over the instant action is conferred upon [this Court] pursuant to 26 U.S.C., Section 7402 and 28 U.S.C., Sections 1340 and 1345." (Amend. Compl., ¶ 1.) Under § 1340, "[t]he district courts [] have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Court of International Trade." In addition, § 1345 provides that "[e]xcept as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

It appears to the Court that "neither the Supreme Court nor the [Second] Circuit has ever determined that there exists any uncodified probate exception to a federal court's jurisdiction

over an enforcement action under the Internal Revenue Code." United States v. Tyler, CIVIL ACTION No. 10-1239, 2012 U.S. Dist. LEXIS 34093, at *10 (E.D. Pa. 2012). Moreover, "it is unclear if the probate exception even applies to federal question cases [,] . . . [as] the courts of appeals are currently split on this very issue." Id. In this regard, the Seventh Circuit and the Sixth Circuit have determined that the probate exception is applicable in both federal question and diversity cases. See Jones v. Brennan, 465 F.3d 304, 306–09 (7th Cir. 2006) (finding that the probate exception is as applicable to federal question cases as it is to the diversity cases in which it is usually invoked); Tonti v. Petropoulous, 656 F.2d 212, 215 (6th Cir. 1981) (finding that "the federal courts have no probate jurisdiction" in a 42 U.S.C. § 1983 action). However, on the other hand, the Eleventh Circuit has held that the probate exception "relates only to 28 U.S.C. § 1332 (1982), and has no bearing on federal question jurisdiction." In re Goerg, 844 F.2d 1562, 1565 (11th Cir. 1988). In addition, while "[t]he Ninth Circuit also determined that the probate exception applies to both federal question and diversity cases[,] In re Marshall, 392 F.3d 1118, 1131–32 (9th Cir. 2004)[,] [t]he Supreme Court subsequently reversed the Ninth Circuit on other grounds and . . . declined to consider 'whether there exists any uncodified probate exception to federal bankruptcy jurisdiction[,]' [Marshall, 547 U.S. at 308–09]." Tyler, 2012 U.S. Dist. LEXIS at *12 n. 6.

Here, however, the Court finds that it need not resolve whether the probate exception extends to §§ 1340 and 1345 jurisdiction in this case, because even if the probate exception was applicable, the Defendant's reliance on the probate application in this case is misplaced. In this regard, it appears that the Defendant suggests that the probate exception is applicable by pointing to §§ 1806 and 1810 of the New York Surrogate's Court Procedure Act ("SCPA"). Under § 1810, a claimant may "commenc[e] an action on his claim at law or in equity, provided that

15

where a claim has been presented and rejected or deemed rejected pursuant to [§] 1806 in whole or in part the action must be commenced within 60 days after such rejection." In relevant part, SCPA § 1806(3) provides that "[i]f the fiduciary shall fail to allow the claim within 90 days from the date that it has been presented to him, the claim shall be deemed to have been rejected." As such, the Defendant argues that the time in which this Court could have exercised its jurisdiction has lapsed, because (1) the April 27, 1993 Form 4490 that was served on Blake was a proof of claim; (2) this proof of claim was rejected because Blake failed to allow such claim within 90 days after it had been served and (3) the Plaintiff failed to commence this action within 60 days of the rejection of the proof of claim.

Thus, the Defendant's reasoning concedes that the Plaintiff was permitted to bring the present action in this Court and only challenges the timing of the Plaintiff's action. However, "the Second Circuit has held that the probate exception is only available when 'under state law the dispute would be cognizable only by a probate court.'" <u>Days Inn Worldwide, Inc. v. Hazard Mgmt. Group</u>, 10 Civ. 7545 (CM)(KNF), 2012 U.S. Dist. LEXIS 163489, at *4–5 (S.D.N.Y. Nov. 13, 2012) (quoting <u>Lamberg v. Callahan</u>, 455 F. 2d 1213, 1216 (2d Cir. 1972)). Accordingly, putting aside whether the Defendant may raise a statute of limitations challenge in this case, the Court finds that the Defendant cannot challenge jurisdiction based on the probate exception, because, as the Defendant acknowledges, New York State law does not limit jurisdiction of the Plaintiff's claim to the Surrogate's Court.

## D. As to Whether this Court Should Abstain from Exercising Jurisdiction Over the Instant Action Under Colorado River Abstention

The Defendant also argues that due to the Quiet Title Action, this Court should abstain from hearing this action under the abstention doctrine laid out in the Supreme Court's decision in <u>Colorado River</u>. In contrast, the Plaintiff claims that "this action is completely different than [the

Defendant's] state-court action [brought in her individual capacity] and should not be a basis for any abstention or stay of proceedings in this action." (Pl. Opp., pg. 12.) The Court disagrees with the Plaintiff and finds Colorodo River abstention appropriate in this case.

As set forth in the legal standard section above, in determining whether to apply Colorado River abstention, the Court must first make the threshold determination as to whether the federal and state court cases are "parallel." Dittmer v. Cnty. of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998) ("[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under Colorado River."). In this regard, "'[f]ederal and state proceedings are "concurrent" or "parallel" for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same.'" Abercrombie v. College, 438 F. Supp. 2d 243, 258 (S.D.N.Y. 2006) (quoting Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp, 108 F.3d 17, 22 (2d Cir. 1997)). However, of importance, "[p]erfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." In re Comverse Tech., Inc., No. 06 Civ. 1849, 2006 U.S. Dist. LEXIS 80195, at *6 (E.D.N.Y. Nov. 2, 2006) (citing Clark v. Lacy, 376 F.3d 682, 686 (7th Cir. 2004)) (emphasis in original) (internal citation omitted).

"Any doubt regarding the parallel nature of a federal and state action should be resolved in favor of the exercise of federal jurisdiction." In re Comverse Tech., Inc., 2006 U.S. Dist. LEXIS 80195 at *6 (citing AAR Int'l, Inc. v. Nimelias Enters. S.A., 250 F.3d 510, 520 (7th Cir. 2001)). If a court finds that the federal and state cases are not parallel, "Colorado River abstention does not apply, whether or not issues of state law must be decided by the federal court." In re Comverse Tech., Inc., 2006 U.S. Dist. LEXIS 80195, at *12.

The fundamental issue in the case before the Court is whether the Plaintiff can enforce the 1991 estate tax assessment against the Estate. Similarly, in the Quiet Title Action, the state court must resolve the validity of the Plaintiff's claim based on the 1991 estate tax assessment. Both the instant case and the Quiet Title Action require a determination with respect to whether the Plaintiff is time-barred from asserting its claim to collect the 1991 estate tax. Hence, even though the Quiet Title Action and this action might not share "[p]erfect symmetry of parties," in that the Defendant brought the Quiet Title Action in her individual capacity but is a party here in her capacity as a personal representative for the Estate, this Court still finds that the actions are parallel in nature due to the fact that resolution of the Quiet Title Action will undoubtedly resolve the Plaintiff's claim in this action. In re Comverse Tech., Inc., 2006 U.S. Dist. LEXIS 80195 at *6.

Since the Quiet Title Action and the instant action appear to be parallel, the Court will now analyze the Colorado River factors in order to determine whether abstention is appropriate in this case. To reiterate, "[t]he six factors to be considered are: (1) whether the controversy involves a *res* over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights." Pabco Constr. Corp. v. Allegheny Millwork PBT, 12 Civ. 7713, 2013 U.S. Dist. LEXIS 51815, at *6–7 (S.D.N.Y. Apr. 10, 2013) (citing Woodford v. Cmty. Action Agency of Greene Cnty., Inc., 239 F.3d 517, 522 (2d Cir. 2001) (in turn, Moses H. Cone Mem'l

Hosp. v. Mercury Const. Corp., 460 U.S. 1, 22, 23, 25–27, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983), and Colorado River, 424 U.S. at 818)).

A review of these factors supports the Court abstaining from hearing this case. In this regard, as an initial matter, the Court acknowledges that with respect to the factors involving (1) inconvenience of the federal forum and (2) the protection of the rights of the party seeking to invoke federal jurisdiction, that these factors are facially neutral and would thus indicate that abstention is inappropriate here. See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 101 (2d Cir. 2012) ("Where a Colorado River factor is facially neutral, that is a basis for retaining jurisdiction, not for yielding it.") (citation and internal quotation marks omitted). More specifically, neither the state nor the federal forum appears to be more convenient. Furthermore, the Court does not doubt that the state court proceeding will adequately protect the rights of both the parties, including the Plaintiff. The Plaintiff has raised no argument to suggest otherwise. Nevertheless, the Court finds, in its discretion, that the remaining factors establish "'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the *surrender* of that jurisdiction." Eastern Sav. Bank v. Estate of Kirk, 821 F. Supp. 2d 543, 547 (E.D.N.Y. 2011) (citing Moses H. Cone, 460 U.S. at 25–26) (emphasis in the original).

First, the dispute between the parties involves a *res* over which the state court had already assumed jurisdiction in the Quiet Title Action before the Plaintiff even commenced the instant action. Indeed, the Quiet Title Action concerns real property and resolution of the Plaintiff's claim will ultimately settle each party's claims to Premise One and Premise Two. This weighs strongly in favor of abstention here, as "[t]he Second Circuit has held that jurisdiction over the res can be dispositive when applying Colorado River." Credit-Based Asset

Servicing & Securitization, LLC v. Lichtenfels, 658 F. Supp. 2d 355, 361 (D. Conn. 2009) (citing F.D.I.C. v. Four Star Holding Co., 178 F.3d 97, 101 (2d Cir. 1999)).

Second, abstaining will avoid duplicative and piecemeal litigation and, hence, conserve federal judicial resources. The Plaintiff argues "a determination concerning enforcement of the federal tax liability in this Court will not result in any piecemeal litigation," because "this Court's determination of enforcement of the federal tax liability will moot the need for any further determination concerning [the Defendant's] state-court [Q]uiet [T]itle [A]ction." (Pl. Opp., pg. 12.) By arguing that resolution of the instant action will moot the Quiet Title Action, the Plaintiff essentially concedes that both cases fundamentally concern the same issues. Moreover, the Plaintiff overlooks the fact that the Quiet Title Action concerns not just the 1991 estate tax assessment, but also the 1994 estate tax assessment. Consequently, resolution of the Plaintiff's claim in this Court will fail to resolve all the issues presented in the Quiet Title Action. As such, if the Court declines to abstain, the parties will not only be required to litigate issues duplicative as those presented in the Quiet Title Action, but they will also need to continue litigating the Quiet Title Action even if a resolution is reached in this case. In contrast, of importance, resolution of the Quiet Title Action will resolve all disputes between the parties.

Third, the Quiet Title Action was commenced in the state court on February 18, 2010, more than two years prior to the commencement of the instant action. As a result, the parties have already exchanged written discovery and have conducted depositions, including the depositions of the Defendant and representatives for the IRS. (Emouna Aff., ¶ 8.) In addition, the state court's March 29, 2011 order, which denied the Defendant's motion for default judgment, is currently being considered on appeal by the Second Department. (Emouna Aff., ¶ 7.) Indeed, the appeal before the Second Department has already been fully briefed and the

parties are awaiting a date for oral argument.  (Emouna Aff., ¶ 7.)  Also, of importance, the

Plaintiff could have removed the Quiet Title Action to Federal Court pursuant to 28 U.S.C. §§

1441 and 1446, but failed to do so.  See Machat v. Sklar, 96 Civ. 3796 (SS), 1997 U.S. Dist.

LEXIS 14803, at *17 (S.D.N.Y. Sept. 25, 1997) ("[The Plaintiff's] failure to properly remove

weigh[]s heavily in favor of abstention.")  (citing Continental Airlines, Inc. v. Goodyear Tire and

Rubber Co., 819 F.2d 1519, 1524 (9th Cir. 1987)); Nancy Johnson Corp. v. Valvo, No. 90 Civ.

1364 (JSM), 1990 U.S. Dist. LEXIS 7320, at *3–4 (S.D.N.Y. June 15, 1990) (finding "that

considerations of wise judicial administration, giving regard to conservation of judicial resources

and comprehensive disposition of litigation, dictate[d] the dismissal of defendants'

counterclaims," because, in part, the defendants failed to remove the state court action to the

federal district court within the time frame permitted by 28 U.S.C. § 1446) (citing Colorado

River, 424 U.S. at 817) (internal quotation marks omitted).

Finally, while resolution of the instant action will depend in part on the application of

federal tax law with respect to the 10-year statute of limitations period, it will also rely heavily

on the application of New York State law.  In relevant part, under 26 U.S.C. § 6502(a), "[w]here

the assessment of any tax . . . has been made . . . , such tax may be collected by levy or by a

proceeding in court, but only if the levy is made or the proceeding begun . . . within 10 years

after the assessment of the tax[.]"  However, "[i]f a timely proceeding in court for the collection

of a tax is commenced, the period during which such tax may be collected by levy shall be

extended and shall not expire until the liability for the tax (or a judgment against the taxpayer

arising from such liability) is satisfied or becomes unenforceable."  26 U.S.C. § 6502(a).  In

addition, 26 U.S.C. § 6503(b) provides that "[t]he period of limitations on collection after

assessment prescribed in [§] 6502 . . . shall be suspended for the period the assets of the taxpayer

are in the control or custody of the court in any proceeding before any court of the United States or of any State or of the District of Columbia, and for 6 months thereafter."

Although the ten-year statute of limitation period for collecting a tax is governed by federal law, the ultimate determination of the Plaintiff's claim here will be determined by the application of New York State law. This is because the Plaintiff asserts that, in accordance with § 6502(a), it properly commenced a proceeding under New York State law by serving Blake with the Form 4490 on April 27, 1993. (Pl. Opp., pgs. 8–9). Thus, the Court will need to look to New York State law in order to determine whether, under New York State Law, the Plaintiff's service of the Form 4490 constituted the commencement of a timely proceeding to collect the tax so as to extend § 6502(a)'s ten-year statute of limitation period. Indeed, in making its argument, even the Plaintiff cites to a decision of the New York State Court of Appeals ("the Court of Appeals"), which held that "in New York it is settled law that the filing of a verified claim with the representative of an estate is the first step toward having the claim tried and determined and it is viewed as the commencement of a special proceeding that tolls the statutory period of limitations." In re Estate of Feinberg, 18 N.Y.2d 499, 507 223 N.E.2d 780, 783 (1966) (citations and internal quotation marks omitted). The Court of Appeals further held that "when, under State law, a notice of claim would be regarded as the first step toward judicial settlement of the claim, a notice of claim for unpaid Federal taxes has been held to toll the Statutes of Limitation prescribed by the Internal Revenue Code." Id. at 254; see also United States v. Warner, No. 83 CIV 3717 (LBS), 1985 U.S. Dist. LEXIS 15859, at *9 (S.D.N.Y. 1985) (citing to Feinberg, 18 N.Y.2d at 254). Therefore, the Plaintiff appears to suggest that, under New York State law, Form 4490 operated as a notice of claim or verified claim. In this respect, the Plaintiff's

assertion that it is not time-barred from enforcing the tax lien against the Defendant's property requires an analysis of New York State Law.

Similarly, New York State law considerations underlie the Plaintiff's argument for a statutory suspension to the 10-year statute of limitations period under § 6503(b). In particular, relying on SCPA § 201(3), the Plaintiff claims that "the 10-year statutory period of limitations was suspended and the assessment liens by the [IRS] against the [E]state are still valid," because "there has been no final accounting approved by the Surrogate's [C]ourt with respect to the [E]state." (Pl. Opp., pgs. 9–10.) However, to determine whether the Surrogate's Court still controls or has custody of the assets of the Estate will in the rest on the application of the SCPA to the facts at issue in both this case and the Quiet Title Action.

Accordingly, in light of (1) the fact that the parties' dispute involves a *res* over which the state court has assumed jurisdiction; (2) the duplicative nature of the instant action with the Quiet Title Action; (3) the likelihood of piecemeal litigation and the waste of federal judicial resources if the instant action is permitted to proceed; (4) the Plaintiff's failure to remove the Quiet Title Action to federal court; (5) the fact that the Quiet Title Action was commenced more than two years prior to the instant action and has been actively litigated; and (6) the need to apply state law to ultimately determine the outcome of the Plaintiff's claim, the Court, in its discretion, abstains from exercising jurisdiction under <u>Colorado River</u> and dismisses the Plaintiff's action.

**E. As to Whether the Instant Action Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because the Plaintiff's Claim is Time-Barred**

The Defendant here asserts that the Plaintiff's action is barred by statute of limitations and therefore must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). In making this assertion, the Defendant relies on the same argument she made in challenging this Court's jurisdiction based on the probate exception, as discussed above. However, because the Court has

abstained from hearing the instant action and the issue of whether the Plaintiff's claim is time-barred is the essential issue in the Quiet Title Action, the Court declines to issue any ruling with respect to this matter.

### III.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the Court, in its discretion, abstains from exercising jurisdiction over the instant action and the Plaintiff's Amended Complaint is dismissed without prejudice; and it is further

**ORDERED,** that the clerk of the Court is respectfully direct to close this case.


**SO ORDERED.**
Dated: Central Islip, New York
April 20, 2013


_____*/s/ Arthur D. Spatt*_____
ARTHUR D. SPATT
United States District Judge